STURTEVANT *vs.* WATERBURY and another.

---

When an answer is positive, no decree can be made against it upon the
testimony of a single witness. If, however, there are circumstances
which strengthen the witness and entitle him to greater credit, this
forms an exception. In weighing circumstances, equal credit is to be
given to each, and it is to be forgotten that one is a disinterested wit-
ness.

*It seems*, that where a question of fraud depends, not upon the answer and
the testimony of one witness, but upon facts and circumstances disclosed
by the pleadings and proofs on both sides, all of which, taken together,
still leave the point in doubt: the defendant has a right to read his an-
swer on a feigned issue. At any rate, it is a fair matter of discretion
to give him the benefit of evidence before the jury as fully as it exists
upon the pleadings and proofs. It would follow that the bill should be
read, with a view to the better understanding of the answer.

Where conveyances had been decreed valid, the grantors were allowed
the liberty to read the answers of the grantees on an issue, in order to
show the motives for purchasing: provided the opposite party attempt-
ed to use the conveyances on the trial.

*November,*
  1832.

*Practice.*        A feigned issue had been directed in this cause, for the pur-
*Reading an-*    pose of trying the question of fraud in relation to an assign-
*swer on feigned*
*issue.*          ment made by one defendant to another of partnership pro-

perty. It was lately tried; and the jury, being unable to agree upon a verdict, were discharged.

A motion was now made, on the part of the defendants, for leave to read their answers in evidence at the next trial of the issue.

The petition, upon which the motion was founded, set forth, that the answers fully explained the motives of the defendants, as well as the manner in which the division of their partnership effects was made; also, in what way the value was ascertained; that their motives and certain particulars were known only to themselves, and they were unable to give common-law-proof of the same; and that the difficulty of showing clearly to a jury all the facts and circumstances connected with the settlement and dissolution of their copartnership, without the benefit of their oaths, would be very great and probably lead to injustice.

These, in connection with the fact of one jury having been about equally divided upon the question of fraud and failing to give a verdict, were the principal grounds for the application.

Mr. *S. P. Staples*, in support of the petition.

Mr. *W. P. Hawes*, for the complainant.

THE VICE-CHANCELLOR. How far the court will direct the answers to be read upon the trial of the feigned issue, under the circumstances now before the court, is a matter of some importance; and it is desirable, in disposing of the question, to ascertain what the general rule is upon the subject.

In *Ibbotson* v. *Rhodes*, 1 *Eq. Ca. Ab.* 229, *pl.* 13, S. C. 2 *Vern.* 555, the answer denied notice of the plaintiff's title; but which notice the plaintiff proved by one witness. There was oath against oath. An issue was awarded; but, as it would have been a matter of course for the jury to find for the plaintiff, provided the cause had been submitted upon the testimony of this witness alone, and as the court would then be called upon to decree according to the verdict, which would, in effect, have been a decree upon the evidence of one witness against

1832.

STURTEVANT

v.

WATERBURY

the positive denial of the answer, therefore, in order to avoid that absurdity, the court directed the answer to be read at the trial—not as conclusive evidence, but so that the defendant might have the benefit of his oath and the jury give it such weight as they should think proper.

In *Only* v. *Walker*, 3 *Atk.* 408, the case of *Cant* v. *Lord Beauclerk* is mentioned, as having occurred before Lord *Hardwicke*, and where there was oath against oath. He directed the answer to be read upon the trial of the issue : because it would afford the means of trying, by the jury, the credit of the witness and the party. But, in the principal case, of *Only* v. *Walker*, the Master of the Rolls refused to direct the answer to be read at law; because it was not merely oath against oath, but the testimony of the witness to the fact of an agreement, which was denied by the answer, yet corroborated by circumstances; and the matter not resting singly upon the oath of the witness, he held it not to be within the rule laid down in *Ibbotson* v. *Rhodes* and *Cant* v. *Lord Beauclerk*. He would not, however, send it to a jury under such circumstances, without the consent of the defendant; inasmuch as it would have been unjust to impose upon him this mode of determining the question and not give him the benefit of his answer.

Lord *Eldon* acted upon the same principle in *The East India Company* v. *Donald*, 9 *Ves.* 275, where he declined sending the cause to a jury, unless the defendant desired it.

He had occasion to examine the principle upon which courts of equity send cases to a jury where there is a positive denial in an answer, and the testimony of one witness in opposition; and he shows clearly the difficulty to arise, from the difference in the rule of evidence here and in a court of law, in regard to a defendant's answer. Here, the defendant is entitled to the protection of his own conscience when it is appealed to by his adversary; whilst, at law, a party is not permitted to make evidence for himself. When, therefore, the answer is positive, no decree can be made against it upon the testimony of a single witness. If, however, there are circumstances which strengthen the witness, and entitle him to greater credit, this forms an exception to the general rule ; but, in weigh-

ing circumstances, equal credit is to be given to each, and it is to be forgotten that one is altogether a disinterested witness. Hence, as Lord *Eldon* observes, if the scale is to preponderate by circumstances, it is the business of this court to decide upon the preponderance, and not send it to a jury to try whether the circumstances form a weight of evidence sufficient to turn the scale; for, a jury cannot hear the defendant's answer, which is his evidence, without an order; and, if they do hear him under an order, they hear him subject to a prejudice arising from his interest, which, according to the principle of evidence in the court of chancery, ought not to exist. He, therefore, could not see the propriety of directing an issue in such cases, unless the court was willing to give judgment upon the question, whether the circumstances were sufficient to turn the scale so as to authorize a decree against the defendant, and the defendant should ask, at his peril, to withdraw it from this court, and run the risk of an inquiry less favorable in its principle, by praying an issue. Upon this ground he was inclined to think the court ought to act.

These principles, however, seem not applicable to all cases where this court may think proper to direct an issue: for there are many besides, where this court, for its own convenience and without consulting the wishes of either party, will send it to a jury, in order the better to be satisfied of matters of fact. Questions of fraud, depending upon intent, which are now declared to be questions of fact in all cases, are peculiarly of this description, and very appropriately the subject of investigation before a jury.

In the present case, the court directed an issue upon a question of fraud presented, not upon the answer and the testimony of one witness merely, but depending upon a variety of facts and circumstances, disclosed by the pleadings and the testimony of several witnesses examined on both sides, and all of which, taken together, leave the question involved in doubt and of difficult determination. In such cases, if it is not a matter of right in the defendant to have his answer read to the jury, (and I am strongly inclined to think it is not, since the issue is directed, not by his desire, but upon the volition of the court itself) it is certainly a matter of discretion in the court

1832.

STURTEVANT
v.
WATERBURY

to give him the benefit of the evidence before the jury as fully as it exists here, and to the same extent to which he would be entitled to it if the cause was to be decided without such trial.

There is one case which I consider an authority for this course. It is the case of *Lord Milton* v. *Edgeworth*, 5 *Brown, P. C.* 313, where, an issue was ordered in relation to an alleged agreement. Lord *Milton* appealed from the order to the House of Lords; and complained of the injustice of directing an issue, because, upon the trial, he could not read an answer which had been put in and should be deprived of that which the respondents had made evidence at the hearing of the cause. The court affirmed the order, with this addition, that the appellant should be at liberty to read the answer at the trial. This decision took place in one thousand seven hundred and seventy-two; and there is no case which has come under my observation in collision with it.

I shall order that the defendants have leave to read their answer to the jury, so that the latter may have the whole case before them and give such weight to this pleading as they may think proper. It follows that the bill also may be read, with a view to the better understanding of the answer.

On the former trial, the complainant read in evidence the two deeds of conveyance from the defendants to Nathaniel Waterbury and Joseph L. Moore, who were made defendants to this suit; but which conveyances this court decreed were not fraudulent. The present defendants now ask, if those deeds shall again be read in evidence, that they may be permitted to read the answer of the grantees, showing their motives and the reasons for making the purchases. These deeds are no longer impeached; and if the production of them is to have any influence upon the mind of the jury, I think they should be accompanied by the explanation of the grantees' answers. Those answers were called for by the complainant's bill, and they form a part of the record between the parties, upon which it has been decreed that the conveyances were valid and *bona fide* as respects the grantees.

I shall order that the defendants have liberty to read those answers, if the deeds are again produced.